UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JANE DOE,

                               Plaintiff,

v.

COUNTY OF SAN DIEGO and
TIMOTHY WILSON,

                            Defendants.

Case No.: 19cv2335 JM (AGS)

**ORDER ON COUNTY OF SAN DIEGO'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

On December 13, 2019, Defendant County of San Diego ("the County") moved to dismiss Plaintiff's Second Amended Complaint, (Doc. 1-3 ("Compl.") at 166-78), alleging claims under 42 U.S.C. § 1983 and state tort law. (Doc. No. 2-1 ("Mot.").) Plaintiff filed her response in opposition on March 2, 2020, (Doc. No. 7 ("Opp."), and the County filed a reply on March 9, 2020, (Doc. No. 9 ("Reply").) On March 16, 2020, the court heard oral argument on the motion. For the below reasons, the motion is **DENIED IN PART** and **GRANTED IN PART**.

I.      **BACKGROUND**

Plaintiff alleges in her Complaint that on March 21, 2018, Timothy Wilson ("Wilson") approached Plaintiff from behind and sexually assaulted her while she was inside a restaurant in Vista, California by grabbing her intimate areas. (Compl. ¶¶ 8, 39.) At the time, Plaintiff was 14 years old and Wilson was employed as a San Diego County

Sheriff's Deputy working as a corrections officer at the Vista jail. (*Id.* ¶¶ 1, 12, 15.) That same day, Plaintiff and her mother reported the incident to the San Diego County Sheriff's Department. (*Id.* ¶ 9.) The Sheriff's Department opened an investigation that led to the arrest of Wilson on May 18, 2018. (*Id.* ¶ 10.) Wilson was arrested after being identified by another San Diego County employee from a video taken in the restaurant that was broadcast on the local news. (*Id.* ¶ 16.) Nothing in the record suggests the Sheriff's Department was aware that Wilson was the perpetrator prior to his arrest, or that the Sheriff's Department allowed Wilson to continue working as a sheriff's deputy even though he was a suspect. (*See* Mot. 17 ("Once it was learned that Wilson was involved, he was immediately arrested and taken into custody.").)

Although Wilson was not part of the team investigating Plaintiff's case, Wilson accessed Plaintiff's "investigative file" forty-four times in the fifty-eight days between the incident and his arrest, and downloaded photographs of Plaintiff and sent them to his personal e-mail account. (*Id.* ¶¶ 12, 14.) He was also able to learn Plaintiff's name, cell phone number, and where she went to school. (*Id.* ¶ 14.) In one instance, Wilson titled a photograph of Plaintiff as "white pants." (*Id.*) When Plaintiff discovered that her personal information was accessed by Wilson, and that Wilson downloaded photographs of her and knew where she lived, Plaintiff feared for her safety, became depressed and sick, sought medical treatment, and changed schools. (*Id.* ¶¶ 17-18.) On October 3, 2018, Wilson pled guilty to one count of committing a lewd act on a minor and two counts of unlawfully taking computer data. (*Id.* ¶ 11.) He was sentenced to one year in jail, five years of probation, and ordered to register as a sex offender. (*Id.*)

On April 2, 2019, Plaintiff filed her initial complaint against Wilson and the County in state court. (Doc. No. 1-3 at 9.) On May 8, 2019, Wilson was served, (*id.* at 33), and on June 10, 2019, default was entered against him. (*Id.* at 6.) On November 14, 2019, Plaintiff filed her current Complaint in state court against Wilson and the County. On December 6, 2019, the County removed the case to federal court based on federal question jurisdiction with Wilson consenting to the removal.

Plaintiff brings invasion of privacy and federal civil rights (42 U.S.C. § 1983) claims against Wilson and the County, as well as state law claims of sexual battery against Wilson, and negligence against the County. Plaintiff does not oppose dismissal of her claim against the County for negligent supervision and/or training under state law, (Doc. No. 7 at 9 n.1), or her "state-created danger doctrine claim" under § 1983.

## II. LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the pleadings. Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). To satisfy Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept as true the facts alleged in a well-pled complaint, but mere legal conclusions are not entitled to an assumption of truth. *Id.* The court must construe the pleading in the light most favorable to the non-moving party. *Concha v. London*, 62 F.3d 1493, 1500 (9th Cir. 1995). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In federal civil rights claims (1) the complaint cannot simply recite the elements of a cause of action, but must contain sufficient facts to enable the opposing party to defend itself effectively, and (2) the facts taken as true must plausibly suggest an entitlement to relief so that it would not be unfair to require the opposing party to be subjected to the expense of discovery and litigation. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (citation omitted).

19cv2335 JM (AGS)

## III.   DISCUSSION

### A.   Constitutional Right

To establish a prima facie case under § 1983, Plaintiff must show she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012).  The threshold issue is therefore whether Plaintiff had a constitutional right to informational privacy that was violated.   Without a constitutional right at issue, Plaintiff's constitutional claims fail, as does the basis for the court's federal question jurisdiction.

Plaintiff alleges her constitutional right to informational privacy was violated when Wilson repeatedly accessed her investigative file while his Sheriff's Department colleagues were attempting to identify the perpetrator of her sexual assault.[1]  The County summarily contends, without any analysis or discussion, that "Plaintiff does not have a constitutionally protected property or liberty interest in the information Wilson illegally obtained."  (Mot. 15.)  Based on the analysis below, the Plaintiff has adequately pled a plausible violation of her constitutional rights.

### 1.   Caselaw

In support of the constitutionality of her privacy interest, Plaintiff cites *In re Crawford*, 194 F.3d 954 (9th Cir. 1999).[2]  In *Crawford*, a bankruptcy petition preparer

---

[1] Plaintiff's claims against the County are not directly based on the sexual assault she suffered, but rather Wilson's access to her information.  Her Complaint includes, however, counts of sexual battery and invasion of privacy against Wilson.  (Compl. ¶¶ 38-41.)

[2] The cases cited but not discussed in the County's brief do not support its conclusory argument that no constitutional right is implicated.  *See Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56 (9th Cir. 1994) (involving constitutional challenge to denial of licenses for arcade games); *Olivera v. Vizzusi*, No. CIV. 2:10-1747 WBS GGH, 2011 WL 2366106, at *1 (E.D. Cal. June 9, 2011) (involving a police chief who disclosed

refused to include his social security number on a filing as required by federal statute. *Id.* at 956. The preparer did not object to the collection of the social security number, but to its disclosure on a public court filing. *Id.* at 957. After being fined by the bankruptcy court, the preparer challenged the statutes requiring him to disclose his social security number by arguing that it violated his constitutional right to privacy. *Id.* at 956.

The Ninth Circuit held "the indiscriminate public disclosure of [social security numbers], especially when accompanied by names and addresses, may implicate the constitutional right to informational privacy." *Id.* at 958. The court gave three reasons for its decision. First, the court stated that relevant Supreme Court precedent delineated a constitutionally protected privacy interest "in avoiding disclosure of personal matters." *Id.* (citing *Doe v. Attorney General*, 941 F.2d 780, 795 (9th Cir. 1991) and *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977)). Second, the court stated that social security numbers, unlike phone numbers and names, are unique identifiers that cannot be changed and are generally not disclosed to the public, and if disclosed, can result in identity theft. *Id.* Third, the court stated that "[j]udicial and legislative actions in other contexts also support the conclusion that the disclosure of [social security numbers] can raise serious privacy concerns." *Id.* (citation omitted). As examples, the court noted that an exemption to the Freedom of Information Act (FOIA) had been interpreted by courts to prohibit disclosures of social security numbers, and that Congress had enacted measures, including the Privacy Act and Driver Privacy Protection Act, to control the collection and dissemination of social security numbers by government agencies. *Id.* at 958-59. The court concluded that the disclosure of social security numbers and resulting vulnerability to identity theft "surely implicates [the plaintiff's] informational privacy interest." *Id.* at 959.

The Ninth Circuit nonetheless upheld the two statutes requiring the public disclosure of the petitioner's social security number by balancing his privacy interest against the

---

officers' disciplinary records to other members of the police department); *Forrester v. City of San Diego*, 25 F.3d 804 (9th Cir. 1994) (involving claim of excessive force by police).

government's interests. *Id.* at 959-60. The court in *Crawford* did not expressly state that it was applying intermediate scrutiny, but the court based its decision on the importance of the government's interests in intruding on the plaintiff's privacy right and whether the challenged statutes were overbroad. *Id*. at 960. The court also listed the following relevant factors:

> [T]he type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Id.* at 959 (quoting *Doe*, 941 F.2d at 796). The court noted, however, that "[t]his list is not exhaustive, and the relevant considerations will necessarily vary from case to case." *Id.* The court upheld the statute requiring collection of the preparer's social security number because it found that combating fraud and the unauthorized practice of law in the bankruptcy petition preparer industry was an important legislative purpose. *Id.* at 960. The court also upheld the statute requiring public disclosure of the court filings containing the social security numbers because of the important interest in public access to judicial proceedings. *Id.* The court ultimately found that these public interests outweighed the "speculative" possibility of identity theft.[3] *Id.*

Additionally, in *Whalen*, upon which *Crawford* relies, the Supreme Court upheld New York's constitutional authority to collect, in a centralized database, the names and addresses of all persons prescribed certain drugs. 429 U.S. at 591. In doing so, the Court repeatedly recognized at least a potential constitutional right to informational privacy. For example, the Court found the state program did not, on its face, pose a sufficiently grievous

---

[3] The court also stated that a social security number, unlike "HIV status, sexual orientation, or genetic makeup," is not "inherently sensitive or intimate information, and its disclosure does not lead directly to injury, embarrassment or stigma." *Crawford*, 194 F.3d at 960.

threat to "the individual interest in avoiding disclosure of personal matters" so as to establish a "constitutional violation." *Id.* at 599. The Court also found that "[r]equiring such disclosures to representatives of the [s]tate having responsibility for the health of the community, does not automatically amount to an impermissible invasion of privacy." *Id.* at 602. The Court concluded by recognizing the "threat to privacy implicit in the accumulation of vast amounts of personal information in computerized data banks or other massive government files" and that "the enforcement of the criminal laws . . . . require[s] the orderly preservation of great quantities of information, much of which is personal in character and potentially embarrassing or harmful if disclosed." *Id.* at 605. The Court stated:

> The right to collect and use such data for public purposes is typically accompanied by a concomitant statutory or regulatory duty to avoid unwarranted disclosures. Recognizing that in some circumstances that duty arguably has its roots in the Constitution, nevertheless New York's statutory scheme, and its implementing administrative procedures, evidence a proper concern with, and protection of, the individual's interest in privacy. We therefore need not, and do not, decide any question which might be presented by the unwarranted disclosure of accumulated private data whether intentional or unintentional or by a system that did not contain comparable security provisions.

*Id.* at 605-06 (internal footnotes omitted).

The same year that *Whalen* was decided, the Supreme Court also recognized that "[o]ne element of privacy has been characterized as 'the individual interest in avoiding disclosure of personal matters[.]'" *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457 (1977) (quoting *Whalen*). In a challenge to a statute concerning presidential records, the court held, "at least when [g]overnment intervention is at stake, public officials, including the President, are not wholly without constitutionally protected privacy rights in matters of personal life unrelated to any acts done by them in their public capacity." *Id.*

Outside of *Crawford*, Ninth Circuit cases recognizing a constitutional right to informational privacy uniformly involve medical and/or sexual history information.

7

*See Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 553 (9th Cir. 2004) (government cannot disclose women's pregnancy records to third-party contractors); *Planned Parenthood of S. Ariz. v. Lawall*, 307 F.3d 783, 789-90 (9th Cir. 2002) (minors may not be required to disclose their pregnancy as part of a judicial bypass procedure for parental consent to abortion); *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260 (9th Cir. 1998) (employer may not secretly test employees' blood samples for syphilis, sickle cell genetic trait, and pregnancy); *Doe*, 941 F.2d at 976 (9th Cir. 1991) (government physicians cannot be required to reveal their HIV-positive status to prospective patients); *Thorne v. City of El Segundo*, 726 F.2d 459, 468 (9th Cir. 1983) (police department may not question applicants' sexual history during a polygraph test).

In 2011, however, the Supreme Court downplayed the weight of its precedent concerning the right to informational privacy. *See NASA v. Nelson*, 562 U.S. 134 (2011). In *Nelson*, the Court described *Whalen* and *Nixon* as "two cases decided more than 30 years ago, [in which] this Court referred broadly to a constitutional privacy 'interest in avoiding disclosure of personal matters.'" *Id.* at 138. The Court in *Nelson* avoided the constitutional question by "assum[ing], without deciding, that the Constitution protects a privacy right of the sort mentioned in *Whalen* and *Nixon*." *Id.* The Court found that portions of a government background questionnaire regarding counseling for recent illegal drug use, and certain open-ended questions posed to the applicants' references, were constitutional based on the government's various interests as an employer, including security interests. *Id.* The Court, in reversing the Ninth Circuit's decision, found these government interests outweighed any "interest in avoiding disclosure" that may "arguably ha[ve] its roots in the Constitution." *Id.* (quoting *Whalen*). Because the Supreme Court assumed without deciding the constitutionality of the right, however, it did not overrule the Ninth Circuit's holding that the questionnaire "reach[ed] sensitive issues that implicate the constitutional

right to informational privacy." *See Nelson v. NASA*, 530 F.3d 865, 879 (9th Cir. 2008).[4]

Furthermore, as pointed out by Plaintiff, at least one district court in the Ninth Circuit has considered the disclosure of crime victims' information to a perpetrator in a § 1983 case. In *Varo v. Los Angeles Cnty. Dist. Attorney's Office*, Case No. CV 18-9025-DMG (KSx), 2019 WL 6434557, at *1 (C.D. Cal. Aug. 14, 2019), victims and witnesses to a violent crime, as well as their family members, claimed the county violated their constitutional right to informational privacy by disclosing their information to the perpetrator, who subsequently threatened and shot one of the victim's family members. The disclosure occurred when the prosecutor handed the perpetrator a criminal protective order that was meant to prevent him from approaching the victims, but the order contained the plaintiffs' unredacted "identifying information." *Id.*

In addressing the plaintiffs' § 1983 claims, the district court did not question whether the right existed, or whether the Ninth Circuit's precedent limited the right to apply only to medical records. *Id.* at *4. Instead, the court cited the factors from *Crawford* and found "the right to informational privacy may prevent the government from disclosing to a foreseeably dangerous criminal defendant the identities and home addresses of victims, cooperating witnesses, and their relatives." *Id.* at *6. The court reasoned that if the disclosure of social security numbers "surely implicates" informational privacy rights based on the resulting vulnerability to identify theft, as the circuit court found in *Crawford*, then disclosure of information that exposes an individual to violent physical harm implicates those same interests. *Id.* The court interpreted *Crawford* to hold that the overall context, rather than the particular information disclosed, determines whether a constitutional right is implicated. *Id.* The court stated:

---

[4] Consistent with its other cases, the Ninth Circuit's decision in *Nelson* noted that the plaintiffs provided factual support for their allegation that the information collected would be used to evaluate employees' susceptibility to blackmail based on their sexual orientation and medical information. *Nelson*, 530 F.3d at 871 n.2.

> Of course, the disclosure of names and addresses, in general, does not expose individuals to identity theft or violent crimes. But disclosing that same information in this context – one that makes a violent, gang-affiliated criminal offender aware of the names and addresses of people cooperating with the prosecution's case against him – is entirely different. In this context, that disclosure is enough to implicate informational privacy rights. . . . It is enough, for now, for the [c]ourt to conclude that Plaintiffs have adequately and plausibly alleged facts sufficient to survive the pleading stage, as to the existence of a constitutional right to informational privacy that covers the narrow circumstances at issue here.

*Id.* at *6 (internal citation omitted).[5]

## 2. Analysis

For several reasons, *Crawford* supports the constitutionality of Plaintiff's privacy interest. First, *Crawford* relied on the risk of being victimized by identity theft to support the constitutionality of a privacy interest in one's social security number. 194 F.3d at 958. As recognized by the district court in *Varo*, the risk of identity theft is not the only crime, or even the most serious crime, posed by the disclosure of private information. Certainly, the risk of violent crime is of equal weight, if not far greater weight, in supporting the constitutionality of an informational privacy interest. Although Wilson's reasons for accessing Plaintiff's investigation file are not clear, Plaintiff does plead that by allowing Wilson to access her address and the name of her school, and to download photos of her,

---

[5] Additionally, in *Arakawa v. Sakata*, 133 F. Supp. 2d 1223, 1225 (D. Haw. 2001), the district court found that social security numbers were protected in a case involving disclosures by the government to the public. In *Arakawa*, the plaintiff was involved in a fatal vehicle collision and refused to take a breath or blood test. The state revoked the plaintiff's driver's license, pursuant to a request under the state's freedom of information statute, and released to the media the plaintiff's address, birth date, and social security number, as well police reports related to the accident. The plaintiff sued the state official who revoked his license under § 1983 and various state laws. The court found that under *Crawford*, the plaintiff's right to privacy was implicated based on the release of his social security number and the resulting risk of fraud or identity theft. *Id.* at 1229. Citing state law protecting the confidentiality of social security numbers, the court stated that it could not conceive of a state interest that outweighed the plaintiff's privacy rights. *Id.*

the County placed her in a "known and obvious danger" through deliberate indifference. While the perpetrator in *Varo* was a violent gang-member who physically threatened and harmed his victims after learning their information, Wilson, a sheriff's deputy, allegedly caused harm of a different type (emotional distress) after gaining access to Plaintiff's private information, the type of harm that could be foreseeably aggravated by Wilson's prior assault. Plaintiff's allegations clearly meet the standard set by *Crawford* for the recognition and protection of a constitutional right of privacy in private information. Although *Crawford* addressed the "indiscriminate public disclosure" of social security numbers, the Ninth Circuit has recognized, as discussed above, that the disclosure of medical and sexual history information to non-public third-parties is entitled to a higher level of constitutional protection. Information provided to, and collected by, law enforcement regarding the sexual assault of a minor is as intensely private, sensitive, and personal as any other type of information found to be protected by relevant caselaw.

Then, there is *Crawford's* citation of "[j]udicial and legislative actions in other contexts" to support the "serious" privacy concerns raised by federal statutes requiring public disclosure of social security numbers. *Id*. at 194 F.3d at 958. Here, too, there exists state constitutional and statutory protections that shield Plaintiff's private information which was indisputably breached in this case. Wilson was charged under California Penal Code Section 502(c)(2) for illegally accessing confidential information from a law enforcement database. *See also* Cal. Const. art. I, § 28(a)(4) (establishing the state constitutional right of victims "[t]o prevent the disclosure of confidential information or records to the defendant . . . . which could be used to locate or harass the victim . . . . or which are otherwise privileged or confidential by law").[6]

_____

[6] In addition to the support afforded by *Crawford*, Plaintiff provides several factual assertions in support of his claim that Wilson's access to Plaintiff's information was foreseeable. *See Varo*, 2019 WL 6434557, at *6 (interpreting the vulnerability to identity theft relied on by *Crawford* as a question of foreseeability). In her Complaint, Plaintiff alleges: (1) "law enforcement employees in the Sheriff's Office and the San Diego County

Given the allegedly unfettered access that 4,000 Sheriff's Department employees had to Plaintiff's highly sensitive information as the minor victim of a sexual assault, buttressed by Ninth Circuit precedent, Plaintiff has, at the threshold, plausibly identified a constitutional right to informational privacy worthy of protection under the Federal Civil Rights Act.

**B.    Color of Law**

To act under color of state law in a § 1983 action, the actor must have "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *McDade v. West*, 223 F.3d 1135, 1139-40 (9th Cir. 2000) (citations and internal quotation marks omitted).  In *McDade*, the Ninth Circuit stated:

> It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the [s]tate.  Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.
>
> The acts, therefore, must be performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties.

*Id*. at 1140 (citations and internal quotation marks omitted).  The court emphasized that "[a]cts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it" and "[i]f . . . . the statute was designed to embrace only action which the [s]tate in fact authorized, the words 'under color of any law' were hardly apt words to express the idea."  *Id*. (citations and internal quotation marks omitted); *see also Naffe v. Frey*, 789 F.3d 1030, 1037 (9th Cir. 2015) ("Under [*McDade*

---

Police Department have been arrested, charged and/or convicted of crimes including sexual assault on at least nine occasions since 2005," (Compl. ¶ 30); (2) the state reported 143 "known" or "reported" incidents where law enforcement used the California Law Enforcement Telecommunications Systems (CLETS) database for an "improper purpose," (*id*. ¶¶ 60, 64); and (3) "numerous articles and news stories have highlighted the growing trend of CLETS abuse among law enforcement in recent years," (*id.* ¶ 60).

and other cases], a state employee who is on duty, or otherwise exercises his official responsibilities in an off-duty encounter, typically acts under color of state law. That is true even if the employee's offensive actions were illegal or unauthorized.") (internal citations omitted).

Plaintiff submits that under *McDade*, Wilson was acting under color of state law when he accessed her investigative file. In *McDade*, a clerical employee at a district attorney's office accessed public assistance records to find the location of her husband's ex-wife in order to have her served with notice of a child custody hearing. 223 F.3d at 1138. The ex-wife, who resided in a secret shelter for abused women, was asked to leave the shelter after being served. *Id.* The employee who accessed the ex-wife's information was charged criminally, while the ex-wife brought a § 1983 claim against the employee, the district attorney, and the county. *Id.* at 1137-39. The district court's grant of summary judgment in favor of the county was reversed by the Ninth Circuit, which found the employee had acted under the color of state law because:

> [I]t is undisputed that [the employee] was authorized by the County, and expected as part of her official duties, to access the . . . . database. The County itself described [the employee's] computer access privileges as "necessary to do her job." While acting under the pretense of performing her official duties, she accessed the database during normal working hours, using computer equipment and a password supplied by the County. Because [the employee's] status as a state employee enabled her to access the information, she invoked the powers of her office to accomplish the offensive act. Therefore, however improper [her] actions were, they clearly related to the performance of her official duties. . . . [She] acted under the pretense of state employment by asserting her state-authorized passcode to enter into the database.

*Id.* at 1140-41 (internal citations omitted). The court did not reach the issue of whether a constitutional right was violated. *Id.* at 1141.

Here, it is undisputed that Wilson accessed Plaintiff's information by virtue of his position as a sheriff's deputy. Plaintiff is also entitled to the reasonable inference that Wilson gained access to the database during working hours by entering his state-authorized passcode on a County computer available to him. Although the County highlights the

13

illegality of Wilson's actions, and that Wilson was subsequently convicted criminally, the same was true of the employee in *McDade*.[7] Although as a county correctional officer Wilson may not have possessed authority to investigate sexual assaults or access a database for the purpose of obtaining private information of a sexual assault victim, *McDade* persuasively sets forth why Wilson's illegal activity would still have been under color of state law.

The County also relies on *Perry v. Cnty. of Fresno*, 215 Cal.App. 4th 94 (2013), *as modified on denial of reh'g* (Apr. 26, 2013), in which the state court distinguished *McDade* from cases involving state tort claims. In *Perry*, a correctional officer used information from the jail's computer system to send fake letters to a third-party victim who had sued the officer civilly in an effort to force the party to abandon the civil action. One fake threatening letter purported to be from an inmate. *Id.* at 99. The officer was charged criminally and the third-party victim brought claims in state court under § 1983 and state tort law. *Id.* at 100. In deciding whether the officer was acting within the scope of his county employment, thereby extending vicarious liability to the county, the court held that "[a]n employee who abuses job-created authority over others for purely personal reasons is not acting within the scope of employment." *Id.* at 102.

The *Perry* court also affirmed the dismissal of the plaintiff's § 1983 claim on the ground that the plaintiff failed to allege the constitutional right that was violated. *Id.* at

---

[7] In *McDade*, the employee was convicted of violating California Penal Code § 502(c)(1), criminalizing a person who "[k]nowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data." *See* 223 F.3d at 1138. Wilson was convicted of violating § 502(c)(2), criminalizing a person who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network."

106. *Perry* did not, therefore, discuss whether the employee had acted under the color of state law for the purpose of § 1983 liability, eliding the need to take on *McDade*. *Perry* notably distinguished the color of state law standard, observing "[a]n act under color of state law requires that the officer be acting, purporting, or pretending to act in the performance of his or her official duties." *Id.* (citing *McDade*). The court stated, "[t]hat the employment gave [the deputy] access to information needed to carry out his scheme is insufficient to create a causal nexus between the tort and [his] work." *Id.*

Analyzing whether a government employee was acting under color of state law for a § 1983 claim may often yield the same result as when analyzing whether that employee was acting within the scope of employment. As recognized in *Perry*, however, the standards are not only different, but apply in different situations. While *Perry* may be persuasive or controlling as to Plaintiff's claims that the County was vicariously liable for Wilson's intentional torts, it is not so for her constitutional claims. Plaintiff has sufficiently alleged that Wilson was acting under color of state law when he accessed her information for the purpose of Plaintiff's § 1983 claim.

### C. Municipal Policy

A municipality is not vicariously liable under § 1983 "solely because it employs a tortfeasor." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Municipalities can be liable under a theory of *respondeat superior*, however, if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.*; *see also U.S. v. Town of Colorado City*, 935 F.3d 804, 808 (9th Cir. 2019) ("[T]o establish municipal liability, a plaintiff must show that a local government's 'policy or custom' led to the plaintiff's injury."). A municipal policy exists when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). A policy may also exist if the policy is one of "inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton v.*

*Harris*, 489 U.S. 378, 388 (1989). A theory of liability based on a failure to act requires an allegation that the municipality exhibited deliberate indifference to the violation of the plaintiff's rights. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012).

Plaintiff alleges the County has a policy of allowing anyone employed by the Sheriff's Department to access criminal investigative files, including files associated with the sexual assault of minors, even if the employee is not part of the investigation. (Compl. ¶¶ 54-55.) In response, the County argues that these are conclusory allegations unsupported by facts. (Mot. 17.) For several reasons, the facts alleged by Plaintiff are adequate to plausibly support the County's liability under *Monell*.

First, as discussed above, Plaintiff adequately alleges that she was deprived of her constitutional right to informational privacy when Wilson accessed her information. Second, Plaintiff clearly alleges the County had a policy of allowing broad access to criminal investigative files by anyone employed by the Sheriff's Department. This allegation is plainly factual, not conclusory, and the County was and remains able to challenge this factual allegation outside of a Rule 12(b)(6) motion and upon further development of the factual record. Plaintiff supports the existence of a policy by alleging that "anyone employed" by the Sheriff's Department, which includes "more than 4,000 individuals," could access Plaintiff's file, and the County did not limit access to Plaintiff's file. (Compl. ¶¶ 13, 55.) Plaintiff supports the deliberateness of the policy by specifically quoting two Sheriff's Department spokespersons who allegedly admitted the County had the ability to limit access to Plaintiff's information, but did not do so, because Plaintiff's case was not sensitive or high-profile. (*Id.* ¶¶ 23, 54.) Third, Plaintiff also alleges several facts supporting the plausibility that the County was deliberately indifferent to Plaintiff's constitutional rights. As noted above, Plaintiff alleges facts, including a study conducted by the state, suggesting the County knew or should have known that Sheriff's deputies regularly accessed investigative files for improper purposes. (*Id.* ¶¶ 30, 60, 64.) Finally, the alleged policy is the moving force behind the alleged constitutional violation because, without the policy, Wilson would not have been able to access Plaintiff's information to

her alleged detriment. Accordingly, Plaintiff has sufficiently alleged the County's vicarious liability under *Monell*.

### D. State Law Claims

In its motion, the County does not directly challenge Plaintiff's state law negligence and invasion of privacy claims. Instead, the County argues that all of Plaintiff's state law claims are barred because (1) under *Perry*, Wilson was not acting within the scope of his employment because Wilson had no job-related purpose in accessing Plaintiff's investigative file, (Mot. 10), and (2) the Government Tort Claims Act, CAL. GOV'T. CODE § 800 *et. seq.*, precludes any common law causes of action against the County, (*id*. at 11). Neither argument is persuasive.

### 1. Scope of Employment

As discussed above, the plaintiff in *Perry* brought claims against a county based on a correctional officer's use of inmate information to threaten the plaintiff suing the officer, including sending a fake letter to the plaintiff purporting to be from an inmate. 215 Cal.App. 4th at 98. The plaintiff brought state law claims for intentional infliction of emotional distress and invasion of privacy. *Id*. at 100. The court found the officer was not acting within the scope of his employment, and the county was therefore not vicariously liable. The *Perry* court noted:

> [T]he issue is not whether [the officer] was acting under color of state law when he illegally obtained information from the jail's computer system, but whether [the officer] was acting within the scope of his employment when he committed the later intentional torts. . . . The misconduct underlying appellants' complaint was not [the officer's] act of accessing the confidential information in the performance of his official duties, but the act of writing and mailing the fraudulent letters.

*Id*. at 105. The instant case is therefore distinguishable from *Perry* because Plaintiff's claims for negligence and invasion of privacy are based entirely on Wilson's access to Plaintiff's information and his possession of it, not the use of the information to commit

additional intentional torts or crimes against Plaintiff.[8]   Moreover, *Perry* is factually distinguishable because the plaintiff in *Perry* was not the person whose highly sensitive information was unlawfully accessed, nor was the plaintiff in *Perry* a minor victim of sexual assault whose cooperation with a criminal investigation yielded the private information, presumably to be held in trust and protected.  Accordingly, at this stage in the litigation, Plaintiff has sufficiently pled that Wilson was acting within the scope of his employment when he accessed Plaintiff's information.

### 2.    Government Claims Act

The County also argues that it cannot be liable for Plaintiff's state common law claims because the Government Claims Act, CAL. GOV'T. CODE § 815(a), immunizes the County from civil liability except where provided by statute.  (Mot. 11.)  Rather than explaining why no statute serves as the basis for its liability, the County argues that Plaintiff admitted that her common law claims were improper in her motion for leave to file her Second Amended Complaint, i.e. the current and operative complaint, that was filed in state court.  (Doc. No. 2-2.)  In its opposition, Plaintiff points to the Constitution of California and California Civil Code § 1798.24 in support of her negligence and invasion of privacy claims.  (Opp. 5.)  In its reply, the County does not address the state constitutional provision and statute cited by Plaintiff.  Moreover, the County conceded at oral argument that it would be liable for any tort committed by its employees within the scope of employment. *See* CAL. GOV'T. CODE § 815.2(a).

The County is correct that Plaintiff's former counsel asserted to the state court in his motion for leave to amend Plaintiff's initial complaint that the effect of the proposed amendment was to "[r]emove any reference to the County's liability under California

---

[8] Furthermore, *Perry* is inapplicable to Plaintiff's negligence claim because *Perry's* holding was limited to intentional torts and crimes. 215 Cal.App.4th at 101, 105 ("Despite the broad range of acts that may give rise to the imposition of vicarious liability, before such liability will be imposed on the employer there must be a connection between the employee's intentional tort and the employee's work.").

common law" and "[a]fter meeting and conferring, Jane Doe's counsel determined that it was prudent to remove any reference to the County's violation of California common law and that any such language would be susceptible to a motion to strike and/or demurrer." (Doc. 2-2 at 13.)  Despite declaring that Plaintiff's Second Amended Complaint "removed any reference to the County being liable under California common law," (*id*. at 17), it nonetheless contains claims against the County for negligence and invasion of privacy, (Compl. ¶¶ 27-37.)

 Plaintiff's former counsel's admission that his common law claims are "susceptible" to a motion to strike and/or demurrer is not an admission that the claims are improper. More importantly, the state court already decided that Plaintiff could file her Second Amended Complaint that contains state common law claims.  Finally, in its reply, the County apparently abandons its argument that no statute supports Plaintiff's negligence and invasion of privacy claims.  As noted above, Article I, Section 28(a)(4) of the Constitution of California establishes the right of crime victims "[t]o prevent the disclosure of confidential information or records to the defendant . . . . which could be used to locate or harass the victim . . . . or which are otherwise privileged or confidential by law." Additionally, California Civil Code § 1798.24 provides that "[a]n agency shall not disclose any personal information in a manner that would link the information disclosed to the individual to whom it pertains" except in certain circumstances, none of which appear to apply here.  Accordingly, to the extent a statute or state constitutional provision is required in order for Plaintiff's state negligence and invasion of privacy claims to proceed, Plaintiff has adequately identified such authority, and the County does not argue otherwise.  And, as previously noted, California's Government Tort Liability Act allows for public entity liability predication upon the tortious wrongdoing of its employee when committed within the scope of employment.[9]

_____

[9] The County's request for judicial notice of the state court records (Doc. No. 2-2) is GRANTED.  Plaintiff's objection to the County's request (Doc. No. 8) is OVERRULED.

### E. Declaratory and Injunctive Relief

"Declaratory relief is not an independent cause of action, but instead a form of equitable relief." *Kimball v. Flagstar Bank F.S.B.*, 881 F. Supp. 2d 1209, 1219-20 (S.D. Cal. 2012) (citing *Batt v. City & Cnty. of San Francisco*, 155 Cal.App.4th 65, 82 (2007)). Furthermore, a plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In her Complaint, Plaintiff seeks a declaration stating that the Sheriff's policy of not limiting access to minor sexual assault victims' investigative files is unconstitutional. (Compl. ¶ 26.) Plaintiff also seeks injunctive relief that no one other than essential personnel can view, use, or appropriate Plaintiff's information. (*Id*.)

The parties do not dispute that Wilson is no longer employed by the Sheriff's Department. Plaintiff does not allege that Wilson still maintains access to files of the Sheriff's Department. Instead, Plaintiff claims she faces an imminent threat that other employees of the Sheriff's Department will access her personal and confidential information for the purpose of "retaliation or harassment." (*Id*. ¶ 17.) This is a conclusory allegation that does not establish a likelihood of irreparable harm. Plaintiff also cites no authority for her standing to challenge the accessibility of other victims' information. Finally, Plaintiff's legal remedies argued appear to be adequate for the purpose of establishing any alleged impropriety or illegality of the County's computer access policy and practice. Accordingly, Plaintiff is not entitled to declaratory or injunctive relief at this stage in the litigation.

### IV. CONCLUSION

For the foregoing reasons, the County's Motion to Dismiss Plaintiff's Second Amended Complaint is **DENIED** with respect to Plaintiff's claims for negligence, invasion of privacy, battery, breach of privacy under § 1983, and *Monell* liability under § 1983. The County's motion is **GRANTED** with respect to Plaintiff's claim for declaratory and

injunctive relief. The County's motion is **DENIED AS MOOT** with respect to Plaintiff's claims for negligent supervision and for a "state-created danger" under § 1983 because Plaintiff has abandoned those claims. The County is to file its answer to Plaintiff's Second Amended Complaint *within 15 days* of the filing of this order.

IT IS SO ORDERED.

DATED: April 9, 2020

JEFFREY T. MILLER
United States District Judge

19cv2335 JM (AGS)