UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JANE DOE, by and through her Guardian
ad litem, Jennifer Tanis,

Plaintiff,

v.

COUNTY OF SAN DIEGO, et al.,

Defendants.

Case No.:  19cv2335 JM (AGS)

**ORDER ON MOTIONS FOR
SUMMARY JUDGMENT AND
REQUEST FOR ADDITIONAL
BRIEFING**

Presently before the court are Plaintiff Jane Doe's Motion for Partial Summary Judgment (Doc. No. 119) and Defendant County of San Diego's Motion for Summary Judgment (Doc. No. 120).  Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for resolution without oral argument.  Having considered the Parties' arguments, the evidence, and the law, the court rules as follows.

## BACKGROUND

### I.    Factual Background

This action arises from Plaintiff's sexual assault and the access of Plaintiff's investigative file by her assailant.

///

19cv2335 JM (AGS)

### A.    March 21, 2018 Sexual Assault

On March 21, 2018, Defendant Timothy Wilson ("Wilson") approached minor Plaintiff Jane Doe from behind at a restaurant in Vista, California and sexually assaulted her by grabbing her buttocks.  (Doc. Nos. 22 at ¶ 8; 119-16 at 3).  At the time, Plaintiff was fourteen years old and Wilson was employed as a corrections officer at the County of San Diego's Vista Detention Facility.  (Doc. Nos. 22 at ¶ 12; 119-16 at 1; 120-2, Ex. C at 15:21-36:10).  Wilson was not on-duty or in uniform.  (Doc. No. 120-2, Ex. C at 93:22-94:5; Ex. D at 83:1-7).  Wilson immediately fled the scene following the assault.  (Doc. No. 22 at ¶ 8).

On the same day, Plaintiff's mother reported the incident to the San Diego County Sheriff's Department.  (Doc. Nos. 22 at ¶ 9; 120-2 at Ex. D, 87:1-5, 87:15-24).  The Sheriff's Department subsequently opened an investigation.  (Doc. No. 22 at ¶ 9).  As part of this investigation, Plaintiff and her mother provided the Sheriff's Department with certain information, including Plaintiff's legal name, home address, cell phone number, and the school Plaintiff attended.  (Doc. Nos. 22 at ¶ 14; 119-16).  The Sheriff's Department additionally took photographs of Plaintiff.  (Doc. Nos. 22 at ¶ 14).  This information and Plaintiff's photographs were placed in a case file on the San Diego Sheriff's Department's NetRMS system.  (Doc. No. 120-2, Ex. C at 34:17-20, 56:9-23, 59:2-8).

On May 18, 2018, Wilson was arrested after he was identified by another San Diego County employee from a video that was broadcast on local news.  (Doc. Nos. 22 at ¶¶ 10; 16; 120-2, Ex. E).  Wilson resigned from the Sheriff's Department following his arrest.  (Doc. No. 120-2, Ex. C at 16:1-7).

### B.    Wilson's Access of Plaintiff's Investigative File

Prior to Defendant Wilson's arrest, Wilson accessed Plaintiff's investigative file on the NetRMS system approximately forty-four times.  (Doc. Nos. 22 at ¶ 12; 120-2 at Ex. C, 52:5-18, 54:17-23).  Using the NetRMS system, Wilson was able to obtain Plaintiff's legal name, home address, date of birth, and all statements Plaintiff had made to the

2

Sheriff's Department. (Doc. No. 120-2, Ex. C at 49:2-8). Wilson further accessed photographs of Plaintiff approximately eight times, downloaded photographs of Plaintiff, and sent certain photographs of Plaintiff to his personal e-mail account. (Doc. Nos. 22 at ¶ 14; 120-2 at Ex. C, 56:22-57:5, 71:13-21).

### C. Wilson's Sentencing

On October 3, 2018, Wilson pled guilty to one count of committing a lewd act on a minor and two counts of unlawfully taking computer data. (Doc. No. 22 at ¶ 11). He was sentenced to one year in jail, five years of probation, and ordered to register as a sex offender. *Id.*

## II. Procedural Background

On April 2, 2019, Plaintiff filed her initial complaint against Wilson and the County in state court. (Doc. No. 1-3 at 5, 9). On May 8, 2019, Wilson was personally served (*id.* at 33), and on June 10, 2019, default was entered against him. (*Id.* at 6, 41-42). On July 2, 2019, Plaintiff filed a First Amended Complaint in state court against Wilson and the County. *Id.* at 18, 46-56. On November 14, 2019, Plaintiff filed a Second Amended Complaint in state court against Wilson and the County, alleging claims under 42 U.S.C. § 1983 and state tort law. *Id.* at 18, 166-179. Specifically, Plaintiff asserted causes of action for: (1) declaratory relief; (2) negligence; (3) invasion of privacy; (4) sexual battery; (5) negligent supervision and/or training; (6) invasion of privacy (§ 1983); (7) liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (§ 1983); and (8) "state-created" danger (§ 1983). *Id.* at 166-179.

On December 6, 2019, the County removed the case to federal court based on federal question jurisdiction with Wilson consenting to the removal. (Doc. Nos. 1; 1-2). On December 13, 2019, the County filed a Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. No. 2). On April 9, 2019, the court: (1) denied the County's motion with respect to Plaintiff's claims for negligence, invasion of privacy, breach of privacy under § 1983, and *Monell* liability under § 1983; (2) denied as moot the County's motion with respect to Plaintiff's claims for negligent supervision and a "state-created"

3

danger under § 1983; and (3) granted the County's motion with respect to Plaintiff's claims for declaratory and injunctive relief.  (Doc. No. 12 at 20-21).

On September 24, 2021, Plaintiff and the County filed their respective Motions for Summary Judgment.  (Doc. Nos. 119, 120).

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*

Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *See id*.  "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."  *Id.* at 254.  The question is "whether a jury could reasonably find *either* that the [moving party] proved his case by the quality and quantity of evidence required by the governing law *or* that he did not."  *Id.* (emphasis in original).  "[A]ll justifiable inferences are to be drawn in [the nonmovant's] favor."  *Id.* at 255.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).  A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading," *Liberty Lobby*, 477 U.S. at 248, and affidavits or declarations supporting his opposition "must be made on personal knowledge," Fed. R. Civ. P. 56(c)(4).  The opposing party need not show the issue will

be resolved conclusively in its favor. *See Liberty Lobby*, 477 U.S. at 248-49. All that is necessary is submission of sufficient evidence to create a material factual dispute, thereby requiring a jury or judge to resolve the parties' differing versions at trial. *See id*.

## ANALYSIS

Both Plaintiff and the County have moved for summary adjudication on Plaintiff's claims against the County. (Doc. Nos. 119, 120).[1] As both Parties' motions address the same or similar issues, the court's resolution is guided by the same analysis. For these reasons, the court will consider the Parties' motions together.

## I. Evidentiary Objections

The County asserts a number of evidentiary objections to the declarations and documents submitted by Plaintiff. (Doc. No. 131-3). The court considers each of these objections below.

### A. Deposition Transcripts

"A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent." *Orr v. Bank of Am.*, 285 F.3d 764, 774 (9th Cir. 2002). Ordinarily, this is accomplished by "attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted." *Id.*

Here, it is undisputed Plaintiff's counsel submitted numerous deposition transcripts without attaching a reporter's certification. Plaintiff's counsel seeks leave of the court to correct this defect, attributing counsel's failure to provide complete exhibits to "remote work communication difficulties" caused by the COVID-19 pandemic. (Doc. No. 135 at 2). The County opposes. (Doc. No. 141). Plaintiff's request to belatedly provide

---

[1] Per the court's order on the County's Motion to Dismiss Plaintiff's Second Amended Complaint, the following claims asserted by Plaintiff remain at issue against the County and are currently in dispute here: (1) negligence; (2) invasion of privacy; and (3) *Monell* liability under § 1983. (*See* Doc Nos. 12 at 20-21; 22).

"complete" versions of its exhibits, supported only by a conclusory statement regarding "COVID-19 related issues" lacks good cause and is **DENIED.**   The Clerk of Court shall **STRIKE** the documents lodged at Docket No. 134.

Notwithstanding the above, "a court reporter's certification is not the only method of authenticating a deposition excerpt." *White v. Home Depot USA Inc.*, No. CV-16-01185-PHX-JAT, 2018 WL 704328, at *4 (D. Ariz. Feb. 5, 2018); *D.T. by & through K.T. v. NECA/IBEW Fam. Med. Care Plan*, No. 2:17-CV-00004-RAJ, 2019 WL 6894508, at *2 (W.D. Wash. Dec. 18, 2019).   In summary judgment proceedings, documents may be authenticated by any manner permitted by Fed. R. Evid. 901(b) or 902. *Glob. Med. Sols., Ltd v. Simon*, No. CV1204686MMMJCX, 2013 WL 12065418, at *9 (C.D. Cal. Sept. 24, 2013).   "Under Federal Rule of Evidence 901(b)(4), 'the excerpts may also be authenticated by reviewing their contents,' and '[a]uthentication is accomplished by evidence sufficient to support a finding that the matter in question is what its proponent claims.'"   *White*, 2018 WL 704328, at *4; *see also Renteria v. Oyarzun*, No. 05-CV-392-BR, 2007 WL 1229418, at *2 (D. Or. Apr. 23, 2007).

Here, the County does not contend the deposition transcripts Plaintiff relied upon are not what they purport to be.   Indeed, the County cites to a number of the same depositions in its own summary judgment briefings. *See Orr*, 285 F.3d at 776 ("[W]hen a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all other parties[.]").   "Considering the contents, nature, and appearance of the excerpts, and the fact that [the County does] not assert they are not authentic, the [c]ourt considers the depositions adequately authenticated for purposes of this summary judgment proceeding." *White*, 2018 WL 704328, at *4.

The court is further mindful that the 2010 amendments to Federal Rule of Civil Procedure 56 "eliminate[d] the unequivocal requirement that evidence submitted at summary judgment must be authenticated[.]" *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016); *see also James Huntsman v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, No. 2:21-CV-02504, 2021 WL 4296208, at

*5 (C.D. Cal. Sept. 10, 2021) ("Since the 2010 amendments to Rule 56 of the Federal Rules of Civil Procedure, evidence need not be admissible in the form presented to a court on summary judgment.  Rather, it is the content of the evidence that must be admissible.") (emphasis in original); *Hartranft v. Encore Cap. Grp., Inc.*, No. 3:18CV01187 BEN (RBB), 2021 WL 2473951, at *11 (S.D. Cal. June 16, 2021) ("The Court will consider the substance of evidence that would be admissible at trial even if the form of the evidence is improper so long as that same evidence may be admissible in another form.").  The court is not convinced the substance of the relied upon depositions could not be presented in a form admissible at trial.

For these reasons, the County's objections on the above grounds are **OVERRULED.**

## B.    Missing Exhibits/Slip Sheets

The County objects to Exhibits 6 and 7a of Plaintiff's Motion, because Plaintiff did not timely file these exhibits with Plaintiff's Motion for Partial Summary Judgment. (Doc. No. 131-3 at ¶¶ 8-9).   Plaintiff does not dispute these exhibits were not timely submitted. Instead, Plaintiff filed a "Notice Regarding Exhibit Attachment" belatedly submitting these exhibits on September 27, 2021—three days later—and attributes the discrepancy to a late-discovered error.  (Docs. No. 121; 135 at 2).  Despite this, Plaintiff did not actually seek leave from this court to file these missing exhibits late until over a month later—on October 28, 2021.  (Doc. No. 135).

Here, Plaintiff has not adequately justified its failure to include these exhibits in its original summary judgment papers.  Nevertheless, the County has also not adequately explained how it was substantively prejudiced by a three-day delay.  In order to fully consider the Parties' motions on the merits, the court exercises its discretion to consider the versions of Exhibits 6 and 7a attached to Plaintiff's "Notice Regarding Exhibit Attachment."   The County's objections with respect Exhibits 6 and 7a are **OVERRULED.**

The County additionally objects to Exhibits 7B, 11-17, and 19-23 as being untimely. (Doc. No. 131-3 at ¶¶ 10, 14-20, 21-25). Based on the court's independent review of the docket, however, Exhibits 7B, 11-17, and 19-22 were submitted timely as attachments to Plaintiff's Motion for Partial Summary Judgment. (Doc. Nos. 119-12, 16-22, 24-27). Although Exhibit 23 was not submitted with Plaintiff's Motion for Partial Summary Judgment (Doc. No. 119-1 at 15), Plaintiff did timely submit this exhibit in connection with Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. No. 128-2), which addresses similar issues. The court, therefore, **OVERRULES** the County's objections with respect to these exhibits.

Finally, the County objects to a number of Plaintiff's exhibits based on Plaintiff's failure to include slip sheets or to number exhibit pages. (Doc. No. 131-3 at ¶¶ 14-19; 20-25). The court agrees counsel's failure to include a slip sheet or to number the pages of its exhibits makes it needlessly difficult to identify the specific exhibits Plaintiff is referencing in her briefing. Despite this, Plaintiff did file a "Compendium of Evidence" that includes an index of exhibits. (Doc. No. 119-4). Plaintiff also filed exhibits with corresponding exhibit numbers on the docket. *See* Docket. As such, the court has been able to identify—albeit with more difficulty than necessary—the exhibits Plaintiff is referencing in her briefing, as the County has also appeared to do. For these reasons, in the interests of resolving the Parties' motions on the merits, the County's objections on these grounds are **OVERRULED.**

## C.   Relevance, Foundation, Personal Knowledge, Mischaracterization Objections

With respect to the County's objections as to relevance, lack of foundation, or personal knowledge, such objections are "duplicative of the summary judgment standard itself." *San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 3:15CV1401 BEN (MDD), 2018 WL 4680005, at *6 (S.D. Cal. Sept. 28, 2018). The County's objections Plaintiff mischaracterized certain exhibits are similarly superfluous. "Instead of *objecting*, parties should simply argue that the facts are not material.

8

Similarly, statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment." *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (emphasis in original); *see Sandoval v. Cty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) ("[P]arties briefing summary judgment motions would be better served to 'simply *argue*' the import of the facts reflected in the evidence rather than expending time and resources compiling laundry lists of relevance objections.") (emphasis in original). The County's objections on these grounds are **OVERRULED.**

## II. *Monell* Liability under 35 U.S.C. § 1983

Both Plaintiff and the County request summary judgment on Plaintiff's *Monell* claims against the County. (Doc. Nos. 119-1 at 10-22; 120-1 at 26-34).

The contours of Plaintiff's *Monell* claims are not exactly clear in this case. As best as the court can tell, Plaintiff appears to be claiming *Monell* liability under two theories. First, Plaintiff asserts the County implements a department-wide policy that allows anyone employed by the San Diego County Sheriff's Office to access criminal investigative files, without further procedural safeguards. (Doc. No. 22 at ¶ 54). Plaintiff alleges this policy violates her constitutional right to informational privacy. (Doc. Nos. 22 at ¶ 58; 119-1 at 10-12). Second, Plaintiff argues the County engaged in deficient training, discipline, and supervision for use of the NetRMS system. (Doc. No. 22 at ¶ 59).

### 1. Deprivation of a Constitutional Right

The threshold question as to whether Plaintiff can establish *Monell* liability is whether a constitutional violation has occurred. *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (a *Monell* claim cannot survive without an underlying constitutional violation); *Lockett v. Cty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020) (*Monell* claims are "contingent on a violation of constitutional rights.").

///

### a. Whether Plaintiff's Personal Information is Protected

9

In its Motion for Summary Judgment, the County argues Plaintiff cannot establish a constitutional right of privacy to personal information she willingly provided to the San Diego County Sheriff's Department in furtherance of its investigation of her sexual assault.  (Doc. No. 120-1 at 27).

"While the Supreme Court has expressed uncertainty regarding the precise bounds of the constitutional 'zone of privacy,' its existence is firmly established." *Ferm v. United States Tr. (In re Crawford)*, 194 F.3d 954, 958 (9th Cir. 1999) (citing *Whalen v. Roe,* 429 U.S. 589, 599-600 (1977); *Griswold v. Connecticut,* 381 U.S. 479, 483 (1965)).

In *Whalen*, the Supreme Court identified two categories of privacy interests.  The first category derives from "the individual interest in avoiding disclosure of personal matters."   429 U.S. at 599.   The second category stems from "the interest in independence in making certain kinds of important decisions."  *Id.* at 599.  This first category—coined the right to "informational privacy"—"applies both when an individual chooses not to disclose highly sensitive information to the government and when an individual seeks assurance that such information will not be made public." *Planned Parenthood of S. Ariz. v. Lawall*, 307 F.3d 783, 789-90 (9th Cir. 2002); *see also Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998).

Plaintiff contends it is this first category that is implicated here.  (Doc. No. 119-1 at 10).  The question before the court, then, is whether Plaintiff possesses a constitutional right of privacy to her personal information as the minor victim of a sexual assault.[2]  In considering this question, the court looks to the Ninth Circuit's decision in *In re Crawford*.  In *Crawford*, appellant—a non-attorney bankruptcy petition preparer— did not include a social security number on documents relating to two bankruptcy petitions appellant had prepared.  194 F.3d at 956.  Appellant did not object to the

---

[2] The court has already considered this question in the context of the County's Motion to Dismiss Plaintiff's Second Amended Complaint.  (*See* Doc. No. 12 at 4-12).  For completeness, the court repeats some of this analysis here.

bankruptcy court's collection of his social security number, but instead objected to the subsequent public disclosure of his social security number in a court filing.  *Id.* at 957. After being fined by the bankruptcy court, appellant challenged the statutes requiring him to disclose his social security number as violating his constitutional right to privacy.  *Id.* at 956.

The Ninth Circuit agreed with appellant that "the indiscriminate public disclosure of [social security numbers], especially when accompanied by names and addresses, may implicate the constitutional right to informational privacy."  *Id.* at 958.  Specifically, the court noted that the "harm that can be inflicted from the disclosure of a [social security number] to an unscrupulous individual is alarming and potentially financially ruinous." *Id.* (quoting *Greidinger v. Davis,* 988 F.2d 1344, 1354 (4th Cir. 1993)).  And "[u]nlike a telephone number or even a name, an individual's [social security number] serves as a unique identifier that cannot be changed and is not generally disclosed by individuals to the public."  *Id.*

Finally, the court reasoned that "[j]udicial and legislative actions in other contexts also support the conclusion that the disclosure of [social security numbers] can raise serious privacy concerns."  *Id.*   As examples, the court noted an exemption to the Freedom of Information Act (FOIA) had been interpreted by courts to prohibit disclosures of social security numbers and that Congress had enacted measures, including the Privacy Act and Driver Privacy Protection Act, to control the collection and dissemination of social security numbers by government agencies.  *Id.* at 958-59.  Given that the disclosure of his social security number would make appellant "vulnerable to being a victim of certain crimes[,]" the Ninth Circuit found such a disclosure "surely implicates [appellant]'s informational privacy interests[.]"  *Id.* at 959.

Here, the County contends the information at issue in this case—the minor Plaintiff's legal name, home address, school address, cell phone number, and photographs of her fully clothed body—is not so inherently embarrassing or compromising as to implicate the right to informational privacy.  (Doc. No. 120-1 at 28-

11

29).   Although it is true that names and addresses, in general, may not trigger the constitutional right to informational privacy, the Ninth Circuit has made clear, "it will be the overall context, *rather than the particular item of information*, that will dictate the tipping of the scales." *Crawford*, 194 F.3d at 959 (emphasis added).   Indeed, the Ninth Circuit has made clear the right to informational privacy "covers a wide range of personal matters[.]"   *Nelson v. NASA*, 530 F.3d 865, 877 (9th Cir. 2008), *rev'd on other grounds and remanded*, 562 U.S. 134 (2011).

Context matters.   Here, Plaintiff is a minor whose personal information was collected in the context of a sexual assault investigation.   Information provided to, and collected by law enforcement regarding the personal details of a minor victim of a sexual assault is as intensely private, sensitive, and personal as any other type of information found to be protected by relevant case-law.   This is especially true in the sexual assault context.   The court is mindful "a historic social stigma has attached to victims of sexual violence.   In particular, a tradition of 'blaming the victim' of sexual violence sets these victims apart from those of other violent crimes." *Bloch*, 156 F.3d at 685-86 ("[A] rape victim has a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing the intimate details of the rape where no penological purpose is being served."); *see also Horowitz v. Peace Corps*, 368 U.S. App. D.C. 192, 201 (2005) ("Our law uniformly recognizes that strong privacy interests are implicated when dealing with an individual's sexual activity, especially when the individual has reported a sexual assault.").

In similar circumstances, Ninth Circuit cases have uniformly recognized a constitutional right to informational privacy.   *See Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004) ("Individuals have a constitutionally protected interest in avoiding 'disclosure of personal matters,' including medical information."); *Planned Parenthood of S. Ariz. v. Lawall*, 307 F.3d 783, 789-90 (9th Cir. 2002) (holding that a female minor has a privacy interest in avoiding disclosure of the fact that she is pregnant as part of a judicial bypass proceeding used as an alternative to parental consent);

*Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269-70 (9th Cir. 1998) (holding that whether an individual has syphilis, is pregnant, or carries a sickle cell trait, are "aspects of one's health in which one enjoys the highest expectations of privacy"); *Doe v. Attorney Gen. of United States*, 941 F.2d 780, 796 (9th Cir. 1991) (9th Cir. 1991) ("[I]nformation regarding an individual's HIV-status or AIDS diagnosis . . . fall[s] within the ambit of the privacy protection afforded medical information."); *Thorne v. City of El Segundo*, 726 F.2d 459, 468 (9th Cir. 1983) ("The interests [appellant] raised in the privacy of her sexual activities are within the zone protected by the constitution.").

Information identifying the minor victim of a sexual assault further implicates the minor's fundamental interest in preserving his or her own personal security. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1063 (6th Cir. 1998) ("[I]t goes without saying that an individual's interest in preserving her life is one of constitutional dimension.") (quotation omitted). The *Varo v. L.A. Cty. Dist. Attorney's Office*, 473 F. Supp. 3d 1066 (C.D. Cal. 2019) decision is instructive on this point. In *Varo*, victims and witnesses to a violent crime, as well as their family members, claimed the county violated their constitutional right to informational privacy by disclosing their information to the perpetrator, who subsequently threatened and shot one of the victim's family members. The disclosure occurred when the prosecutor handed the perpetrator a criminal protective order that was meant to prevent him from approaching the victims, but the order contained the plaintiffs' unredacted "identifying information." *Id*. at 1069-70.

In addressing the plaintiffs' § 1983 claims, the district court did not question whether the right existed, or whether the Ninth Circuit's precedent limited the right to apply only to medical records. *Id*. at 1072-73. Instead, the court cited the factors from *Crawford* and found "the right to informational privacy may prevent the government from disclosing to a foreseeably dangerous criminal defendant the identities and home addresses of victims, cooperating witnesses, and their relatives." *Id*. at 1075. The court reasoned that if the disclosure of social security numbers "surely implicates" informational privacy rights based on the resulting vulnerability to identify theft (as the

13

circuit court found in *Crawford*), "then the nonconsensual disclosure of information that exposes individuals to violent physical harm perforce implicates those same interests." *Id.*

The *Varo* court noted persuasively that while "the disclosure of names and addresses" may not implicate the right to informational privacy, disclosure in that case's specific context—"one that makes a violent, gang-affiliated criminal offender aware of the names and addresses of people cooperating with the prosecution's case against him"—was enough to implicate informational privacy interests. *Id.* Certainly, the risk of violent crime against a minor is of equal weight, if not far greater weight, in supporting the constitutionality of an informational privacy interest.

Then, there is *Crawford*'s citation to "[j]udicial and legislative actions in other contexts" to support the "serious" privacy concerns raised by the public disclosure of social security numbers. 194 F.3d at 958. Here, too, there exists statutory protections that shield Plaintiff's private information, which were indisputably breached in this case. It is undisputed, for example, that Defendant Wilson was charged under California Penal Code Section 502(c)(2) for illegally accessing confidential information from a law enforcement database.

In its papers, the County argues Plaintiff cannot establish a constitutional right of privacy to information that is subsequently included in a police report. (Doc. No. 120-1 at 27-28). In support, the County relies centrally on the Ninth Circuit's decision in *Gini v. Las Vegas Metropolitan Police Department*, 40 F.3d 1041 (9th Cir. 1994) and the Third Circuit's decision in *Scheetz v. Morning Call, Inc.*, 946 F.2d 202 (3d Cir. 1991). *Id.* Contrary to the County's arguments, however, neither the *Gini* nor *Scheetz* decisions are so broad as to suggest that minor victims of sexual assault crimes do not have a reasonable expectation of privacy as to the personal information they provide to law enforcement officials.

In *Gini*, appellant was a courtroom deputy who filed theft charges against the girlfriend of a police officer. 40 F.3d at 1042-43. Appellant subsequently contended the

information she provided to the police regarding the alleged theft was protected by the constitutional right of privacy.  *Id.* at 1045.  The Ninth Circuit disagreed, finding instead that by reporting the potential crime, appellant "could not reasonably expect the information to remain secret."  *Id.* at 1045.  Specifically, the Ninth Circuit noted: "[t]he police could have brought charges without [appellant's] concurrence, at which point all the information would have wound up on the public record, where it would have been non-confidential."  *Id.* at 1045 (quoting *Scheetz*, 946 F.2d at 207)).  Similarly, in *Scheetz*, appellants asserted a constitutional right to informational privacy regarding the details of a domestic disturbance included in a police report.  946 F.2d at 203-04.  The Third Circuit found that this information disclosed to the police was not constitutionally protected—concluding that: "[w]hen police are called, a private disturbance loses much of its private character."  *Id.* at 207.

Again, context matters.  The *Gini* and *Scheetz* decisions were predicated on certain details of the alleged crimes being made public.  Both decisions rested centrally on the fact that this information would have wound up eventually on the public record regardless.  In contrast, here, the County does not contend Plaintiff's *personal* information would have somehow been made available to the general public.  Indeed, the courts consistently recognize a strong public interest in maintaining the privacy of minors.

The circumstances here are simply different.  It cannot be said that a minor victim surrenders his or her expectation of privacy to personal information simply because: (1) the victim reports an assault; and (2) these details are subsequently included in a police report that is input into a *confidential* police database.

### b.    Deprivation of the Right to Informational Privacy

The court next considers whether Plaintiff was deprived of her constitutional right to privacy.  The right to informational privacy is not absolute.  Instead, it is a "conditional right which may be infringed upon a showing of proper governmental interest."  *Crawford*, 194 F.3d at 959 (quotations omitted).  In evaluating an informational privacy

claim, the court "'engage[s] in the delicate task of weighing competing interests' to determine whether the government may properly disclose private information." *Id.* (quotations omitted).

Relevant factors to be considered include:

> [T]he type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Id.* (quoting *Doe*, 941 F.2d at 796). This list of factors is not exhaustive and "the relevant considerations will necessarily vary from case to case." *Id.* "In each case, however, the government has the burden of showing that 'its use of the information would advance a legitimate state interest and that its actions are narrowly tailored to meet the legitimate interest.'" *Id.* (quotations omitted).

The County argues that under the Ninth Circuit's *Endy v. Cty. of L.A.*, 975 F.3d 757 (9th Cir. 1999) decision, the mere inclusion of Plaintiff's personal information into the Sheriff's Department's NetRMS database cannot support a constitutional violation. (Doc. No. 120-1 at 29-30). In *Endy*, plaintiff challenged his inclusion in California's Child Welfare Services Case Management System ("CWS/CMS")—which maintains information on child abuse allegations—as violating his constitutional right to privacy. *Id.* at 760, 768. The Ninth Circuit disagreed, finding plaintiff's constitutional right to privacy was not violated merely because numerous agencies could access his information within the CWS/CMS system. *Id.* at 769.

Despite the County's assertions, the *Endy* decision was not an absolute one. Instead, the Ninth Circuit engaged in a balancing test to hold plaintiff had not demonstrated the Los Angeles County's important governmental interest in preventing

16

19cv2335 JM (AGS)

child abuse was outweighed by the minimal risk plaintiff's information would be publicly disclosed. *Id.*

The Ninth Circuit's *Tucson* decision is also instructive.  In *Tucson*, the Ninth Circuit considered the constitutionality of an Arizona statute that, among other provisions, required abortion clinics to submit "unredacted patient files containing name, address, and other patient identifying information" upon request.  379 F.3d at 538.  The Ninth Circuit held: "[e]ven if a law adequately protects against *public* disclosure of a patient's private information, it may still violate informational privacy rights *if an unbounded, large number of government employees have access to the information*."  *Id.* at 551-52 (emphasis added).

With this Ninth Circuit precedent in mind, the court's task in this case is to balance Plaintiff's right to keep her personal information private against the County's law enforcement objectives.  *See Tucson*, 379 F.3d at 545 ("[B]urdens on informational privacy that the state justifies via public health or other such interests are assessed under a specific, detailed test that balances informational privacy and governmental interests.").

Under this balancing test, the court finds the potential for harm in the non-consensual disclosure of the minor victim's personal information—including legal name, home address, school address, and cell phone number—is obviously very high.  Balanced with this harm is the County's contention that allowing detention deputies to review NetRMS case reports furthers a strong governmental interest in solving crimes and ensuring the safety of correctional officers when interacting with incarcerated individuals.  (Doc. No. 120-1 at 31).  In support, the County submits the declaration of Marilyn Mendez, a Sergeant employed by the County of San Diego, whose duties include coordinating training programs for detention officer cadets and supervising the trainers involved in the training process.  (Doc. No. 120-3 ("Mendez Decl.") at ¶ 2).  In her declaration, Sergeant Mendez states that allowing deputies to access and review NetRMS reports (even in investigations in which they are not actively involved) allows the

17

deputies to take information learned in jails, cross-check whether that information matches pending or unsolved crimes in the community, and then communicate any relevant information to their chain of command or the assigned investigative teams. Mendez Decl. at ¶ 15. Sergeant Mendez further states access to the NetRMS reports allows detention deputies to understand how to properly interact with incarcerated individuals. *Id.*

In balance, the court finds the County has not adequately shown how its policies are narrowly tailored to meet the County's legitimate interests. Specifically, the County has not adequately explained how allowing correctional officers access to the personal details of a minor victim furthers an interest in assisting correctional officers with how they interact with incarcerated individuals. Indeed, *any* connection between a minor victim's personal information and this interest is tenuous—at best. Neither the County nor Sergeant Mendez provide any examples of any case where access to a minor's details was linked to any substantial interaction with an incarcerated individual.

The County's contention allowing correctional officers access to NetRMS files facilitates a legitimate interest in solving crimes presents a stronger case. Nevertheless, even in this context, the County has not shown how *automatically* allowing access to the type of information at issue here—including private details as to where the minor victim of a sexual assault lives, goes to school, and can be contacted—is narrowly tailored to this interest. In short, the balance tips here in Plaintiff's favor.

## 2. Plaintiff's *Monell* Theories

The court next examines the legal framework underpinning Plaintiff's *Monell* claims. It is well established "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Instead, a plaintiff may recover under *Monell* under one of three theories. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016).

19cv2335 JM (AGS)

First, "a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'"  *Id.* at 1249 (quoting *Monell*, 436 U.S. at 708).  Second, "under certain circumstances, a local government may be held liable under § 1983 for acts of 'omission,' when such omissions amount to the local government's own official policy."  *Id.*  Third, "a local government may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it."  *Id.* at 1250 (internal quotations omitted).

### a.    Plaintiff's First *Monell* Theory: Unlawful Policies

Under Plaintiff's first *Monell* theory, Plaintiff *appears* to be contending the County had the ability to further restrict the NetRMS system—but failed to do so.   (*See* Doc. Nos. 22 at ¶¶ 54-56; 119-1 at 13-14; 128 at 19).   Plaintiff posits, for example, that the County *could* have implemented a system prohibiting corrections officers from accessing information pertaining to the minor victims of sexual assault crimes until the officer's access to any particular file was approved by an assigned investigator or an investigator's supervisor.  (Doc. No. 138 at 7).

Under Ninth Circuit precedent, "[a] policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations."  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir.1992)).  In an "omission" action, a plaintiff must show the municipality's policy of inaction "amounts to deliberate indifference to the plaintiff's constitutional right, and that the policy caused the violation, in the sense that the [municipality] could have prevented the violation with an appropriate policy."  *Tsao*, 698 F.3d at 1143 (alteration in original) (internal quotations and citations omitted).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a *known or obvious* consequence of his action."  *Christie v. Iopa*, 176 F.3d 1231, 1240 (9th Cir. 1999) (emphasis in original) (internal quotations

omitted).   Plaintiff must demonstrate the County "was on actual or constructive notice that its omission would likely result in a constitutional violation." *Tsao*, 698 F.3d at 1145 (internal quotations omitted).   It is only then that "the omission becomes 'the functional equivalent of a decision by [Defendant] itself to violate the Constitution.'" *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 72 (2011)).

Here, Plaintiff has not submitted evidence sufficient to show the County had either: (1) actual notice its failure to act would result in the constitutional violation at issue; or (2) constructive notice the risk of a constitutional violation was so "obvious" ignoring it amounted to deliberate indifference.

First, Plaintiff fails to point to any evidence demonstrating a pattern of similar past constitutional violations.   In considering claims based on a failure to train municipal employees, the Supreme Court has held "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62.   Here, even viewing the evidence in the light most favorable to Plaintiff, the evidence suggests—at most—that Sheriff's Deputies and other authorized employees commonly accessed the NetRMS system for purposes outside of their official duties.   (*See* Doc. Nos. 119-6 at 113:4-22; 119-15 at 30:12-32:11, 33:16-21, 34:9-16, 68:4-24; 121-2 at 71:8-15, 128-2).

Although troubling, Plaintiff does not contend that an unauthorized access of the NetRMS system—in and of itself—rises to the level of a constitutional violation. Instead, the instant case is predicated on the private details of the minor victim of a sexual assault.   Plaintiff does not point to any evidence in the record, however, of any other instance where a minor victim's private information was improperly accessed. Instead, the court is left to speculate that similar incidents *may* have occurred.

Given this lack of evidence, the court is forced to the inevitable conclusion there is an "absence here of any evidence of a pattern[.]" *Tsao*, 698 F.3d at 1145.   As the Ninth Circuit has stated, this absence "makes it far less likely that [Plaintiff] can prove [the County] was 'on actual or constructive notice,' that its policy would lead to constitutional

violations." *Id.*; *see Connick*, 563 U.S. at 63 ("Because those incidents are not similar to the violation at issue here, they could not have put [the District Attorney] on notice that specific training was necessary to avoid this constitutional violation."); *see also Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) ("Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.  That is, notice of a pattern of *similar* violations is required.") (emphasis in original).

The question then becomes whether the risk of constitutional violations caused by the County's failure to further restrict the NetRMS system was so "obvious" ignoring it amounted to deliberate indifference.  As to this question, the court is bound by Supreme Court precedent that "single-incident liability" occurs only in a "narrow range of circumstances." *Connick*, 563 U.S. at 71-72.  The court is further mindful that "when a municipal employee commits a constitutional tort, it could always be alleged that the municipality failed to enact a policy that would have prevented the tort." *Tsao*, 698 F.3d at 1143-44.

Turning to the facts of this case, it is undisputed files for investigations assigned to specific units, including the child abuse and sexual assault units, are locked, so that only members of that unit may fully access them.  (Doc. No. 119-6 at 57:11-19; 121-1 at 31:20-32:2, 38:22-39:7, 41:17-42:9).  Contrary to Plaintiff's broad contentions, case files within the NetRMS system *are* therefore internally restricted—just not restricted to the extent Plaintiff believes is necessary.

There is also undisputed evidence the Sheriff's Department puts into place multiple safeguards to prevent unauthorized access to NetRMS files.  Specifically, employees must undergo training and comprehensive background checks prior to obtaining access. (Doc. Nos. 120-2, Ex. C at 98:10-99:2; Ex. I at 6.24; Mendez Decl. at ¶ 11).  Under the Sheriff's Department's "Right to Know, Need to Know" policies, an employee may only access confidential files in the furtherance of his or her official duties.  (Doc. No. 120-2, Ex. G at 7.6; Ex. H at 7.6; Mendez Decl. at ¶ 8).  Violation of these policies may result in

employment termination and/or criminal prosecution.  (Doc. No. 120-2, Ex. Q; Mendez Decl. at ¶¶ 12).

For the situation at the heart of this case to arise then, a number of circumstances must coalesce.  First, a minor victim of a sexual assault's case must be assigned to a unit other than the sexual assault or child abuse unit—by virtue of the victim's age and/or the nature of the alleged assault.  Second, an officer would have to pass a background check, receive training, and then still choose to override the Sheriff's Department's "Right to Know, Need to Know" policies to commit a constitutional violation—all under the threat of both disciplinary action and criminal prosecution.  Based on the record before the court, Plaintiff has not introduced sufficient evidence from which a reasonable jury could infer the County was on notice such an occurrence would be a "highly predictable" or "obvious" consequence of the County's inaction.

### 3. Plaintiff's Second *Monell* Theory: Failure to Adequately Train/Supervise/Discipline

Plaintiff also appears to be claiming *Monell* liability based the County's "failure to properly train, supervise, and discipline its employees."  SAC at ¶ 59.  "[A] local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983," but "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick*, 563 U.S. at 61.  Again, to show such inadequacy, Plaintiff must show that the County's failure to train or adequately supervise "amounts to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

In this case, the County has presented uncontroverted evidence detention deputies must complete a sixteen-week academy, which includes a day dedicated to the NetRMS system.  (Mendez Decl. at ¶ 12).  The academy reinforces the Sheriff's Department's "Right to Know, Need to Know" principles at various points.  *Id.*  The penalties for

22

violation—including employment termination and criminal prosecution—are "specifically discussed and emphasized" during training. *Id.* After completion of the academy, detention deputies undergo three months of phase training at the specific jail location where they will serve. *Id.* at ¶ 13. This training involves instruction by two to three training officers and lasts approximately three months. *Id.* During phase training, the "Right to Know, Need to Know" principle and penalties for violation are again discussed. *Id.* Afterwards, detention deputies receive "line-up" training at the beginning of every shift where the "Right to Know, Need to Know" principle and the penalties for violation are discussed at least once annually. *Id.* at ¶ 14.

A training bulletin discussing the "Right to Know, Need to Know" principle is also circulated at least once annually. (Doc. No. 120-2, Ex. L at 69:10-70:14). Deputies must further undergo "refresher" training twice a year as a part of a broader certification process, which includes training on the "Right to Know, Need to Know" principle. (Doc. No. 131-1, Ex. C at 120-2 at 104:19-107:13; Ex. N at 57:11-23). Defendant Wilson testified the Sheriff's Department tries to "ingrain" the "Right to Know, Need to Know" principle into its detention deputies. (Doc. No. 131-1, Ex. C at 121:20-122:22). Indeed, Wilson conceded he was acting inconsistently with the Department's "Right to Know, Need to Know" policies in accessing Plaintiff's file. (*Id.* at 101:6-20).

Rather than point to any specific program-wide inadequacy in the above training procedures, Plaintiff appears to support her failure-to-train claim with evidence the Sheriff's Department's "Right to Know, Need to Know" policies were commonly violated and sporadically enforced. (Doc. No. 128 at 27-29).

Specifically, Plaintiff submits evidence the County was aware of a "few incidents" of unauthorized "snooping" in the September 2009 time period. (Doc. Nos. 119-22 at 1; 121-2 at 71:8-15). Additionally, Defendant Wilson testified he had accessed the NetRMS system for reasons other than his duties as a correctional officer "over a hundred times" and that doing so was "common practice amongst detention deputies" he worked with. (Doc. No. 119-15 at 29:2-16, 30:18-33:21, 61:10-63:7). Plaintiff also points to evidence

23

the only consequence to even repeated violations of the "Right to Know, Need to Know" principle was an informal reprimand or a "write-up and a warning." (Doc. Nos. 119-13 at 61:23-24-62:4, 69:8-25; 119-15 at 50:10-16). Indeed, there is evidence on the record the Sheriff's Department may have only referred "sustained" violations of the "Right to Know, Need to Know" policy to Internal Affairs. (Doc. No. 119-7 at 154:2-21).

Although this evidence is troubling, again, Plaintiff's failure-to-train theory suffers from the same deficiency as its "omission" theory above. Under Ninth Circuit precedent, a § 1983 plaintiff may prove deliberate indifference on a failure-to-train claim through "evidence of a 'failure to investigate and discipline employees in the face of widespread *constitutional violations*.'" *Rodriguez v. Cty. of L.A.*, 891 F.3d 776, 803 (9th Cir. 2018) (emphasis added); *see also Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) ("We have long recognized that a custom or practice can be 'inferred from widespread practices or 'evidence of repeated *constitutional violations* for which the errant municipal officers were not discharged or reprimanded.'") (emphasis added).

As the court already noted above, however, not every unauthorized access to the NetRMS system rises to the level of a constitutional violation. And in this case, Plaintiff has not submitted any evidence the County allowed any officer or employee (apart from Defendant Wilson) to commit repeated *constitutional violations* without reprimand or disciplinary action. Again, the court is left simply to infer that such violations may have occurred without any action taken. Plaintiff has also failed to cite to any persuasive legal authority supporting an argument the instant case falls within the single-incident exception. The fact that additional training or disciplinary measures "would have been helpful . . . does not establish municipal liability." *Connick*, 563 U.S. at 68; *see also Williams v. Cty. of Alameda*, 26 F. Supp. 3d 925, 947 (N.D. Cal. 2014) ("These 'circumstances' generally involve incidents arising from a *total lack* of training[.]") (emphasis added).

Indeed, the court notes Plaintiff's summary judgment briefing on the theories underlying its *Monell* claims, as a whole, largely consists of a bullet-point list of evidence

24

supported by general legal principles.  It is not the court's role to do Plaintiff's legal research or to make legal arguments on Plaintiff's behalf.  *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *Blankenship v. Cox*, No. 3:05-CV-00357-RAM, 2007 WL 844891, at *12 (D. Nev. Mar. 19, 2007)  ("It is not the court's duty to do [Plaintiff's] legal research.").

"The art of advocacy is not one of mystery.  Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court." *Indep. Towers*, 350 F.3d at 929-930.  Rather than make the requisite showing in this case, Plaintiff's briefing on its specific *Monell* theories required the court to connect far too many dots and make far too many assumptions without evidentiary or legal support.  This is not sufficient to survive summary judgment.

There is no question any County employee may "grossly, outrageously, and recklessly misbehave in the course of a single incident." *Okla. City v. Tuttle* , 471 U.S. 808, 830 (1985) (Brennan, J., concurring).  Finding *Monell* liability, here, however, would "unduly threaten" the County with "*respondeat superior* liability." *Id.*

For these reasons, the court **GRANTS** the County's Motion for Summary Judgment on Plaintiff's *Monell* claims.

### III.  Plaintiff's State Law Claims against the County

The court next considers its jurisdiction to address Plaintiff's remaining claims against the County in light of its decision above. *See Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999) (the court has an independent obligation to address whether it has subject matter jurisdiction).

In light of the court's order, the only claims remaining against the County for adjudication are Plaintiff's state law claims for negligence and invasion of privacy.  As the court has effectively disposed of all claims over the County over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over these claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental

jurisdiction over a claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction[.]"); *Pa. Manufacturers' Ass'n Ins. Co. v. Trans Am., LLC,* No. EDCV 18-989 DSF (SPx), 2019 U.S. Dist. LEXIS 98847, at *2 (C.D. Cal. June 12, 2019) (declining supplemental jurisdiction after having granted summary judgment and dismissing all claims over which the court had original jurisdiction).

In their summary judgment briefing, Plaintiff and the County have raised a dispute as to whether: (1) Plaintiff asserted a proper statutory basis for asserting liability against the County; and (2) if so, whether Defendant Wilson was acting within his "scope of employment." (*See* Doc. Nos. 119-1 at 22-25; 120-1 at 18-26). In the court's view, the Parties have raised a complex, unsettled issue of state law. The court is mindful the "primary responsibility for developing and applying state law rests with the state courts." *Curiel v. Barclays Cap. Real Est. Inc.*, No. CIVS093074 FCD/KJM, 2010 WL 729499, at *1 (E.D. Cal. Mar. 2, 2010) (declining to exercise supplemental jurisdiction after dismissal of federal claims). And "[i]n the *usual* case in which federal-law claims are eliminated before trial, the balance of factors . . .will point toward declining to exercise jurisdiction over the remaining state law claims." *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994).

It is more appropriate for the state courts of California to resolve whether Plaintiff has asserted a proper statutory basis for its claims and whether California's "scope of employment" precedent should be extended to these facts. Consequently, at this stage of the proceedings, the court is not inclined to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## CONCLUSION

For the reasons stated above, the court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** the County's Motion for Summary Judgment with respect to the County's *Monell* claims only. The Clerk of Court is instructed to **STRIKE** the documents lodged at Docket No. 134.

19cv2335 JM (AGS)

The Parties are additionally **ORDERED** to meet and confer a file a joint brief no more than **ten pages in length** or separate briefs each no more than **five pages in length** addressing the court's jurisdictional concerns regarding Plaintiff's remaining state law claims against the County. The briefs shall be filed on or before **January 7, 2022**. Until these concerns, and the issues concerning the status of Plaintiff's case against Defendant Wilson are addressed (as set forth in the court's separate Order to Show Cause), the court finds it appropriate to **VACATE** the remaining pre-trial deadlines in this case, subject to resetting, if necessary.[3]

DATED: December 22, 2021

_____
JEFFREY T. MILLER
United States District Judge

---

[3] In light of the court's Order, the County's Motion to Continue (Doc. No. 146) is **DENIED** as moot.

27

19cv2335 JM (AGS)